RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 1 28 09
BY

# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

UNITED STATES OF AMERICA

versus

CHEVELL M. HAMILTON

CRIMINAL NO. 05-50066-01
JUDGE TOM STAGG

## MEMORANDUM RULING

Before the court is a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence filed by Chevell M. Hamilton ("Hamilton"). See Record Document 263. Based on the following, Hamilton's motion is **DENIED**.

### I. BACKGROUND

The presentence investigation report ("PSR") as well as the guilty plea testimony indicate that as a result of wiretaps, a number of telephone calls in which Hamilton participated were intercepted. The telephone calls dealt with the delivery of powder cocaine from Dallas to Shreveport.

In a telephone conversation intercepted on April 15, 2005, arrangements were made for Hamilton to meet co-defendant, Albert Pegues ("Pegues"), who was driving to Shreveport from Dallas. The two agreed to meet in Shreveport in order for Hamilton to purchase one kilogram of powder cocaine. After Pegues met with

Hamilton and another person, officers stopped Pegues's vehicle. Pegues indicated that he had traveled from Dallas. The officers found $18,500 in his vehicle. Because Pegues could not explain the source of the money, the money was forfeited. After he was released from questioning, Pegues called Hamilton and informed him that the money had been seized by the officers.[1]

After intercepting the calls, the officers executed a previously obtained search warrant at 2723 Anna Street in Shreveport. When the officers arrived, Hamilton was standing between a red Oldsmobile and a white vehicle occupied by another co-defendant. This red Oldsmobile had been placed under surveillance and was the same car that Hamilton and another co-defendant used when they met with Pegues to purchase the kilogram of cocaine. Twenty-six point five net grams of crack cocaine were found in the center console of that car. A 9 mm caliber pistol was found underneath the center console and a .45 caliber pistol was found on the floorboard underneath the driver's seat.

On August 25, 2005, a federal grand jury returned a superseding indictment against eight individuals including Hamilton with sixteen counts of various drug and gun charges. See Record Document 84. Hamilton was charged in counts one, two,

---

[1] Pegues later stated that he sold Hamilton a kilogram of cocaine powder for $18,500.

three, four, seven, and ten through fourteen. See id. Count one charged Hamilton and others with conspiracy to distribute 500 grams and more of cocaine, in violation of 21 U.S.C. § 841(a)(1). Count two charged Hamilton and others with conspiracy to possess with the intent to distribute 50 grams and more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count three charged Hamilton and others with possession with intent to distribute five grams and more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count four charged Hamilton and others with possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1) and 2. Counts seven, ten, eleven, twelve, thirteen and fourteen charged Hamilton and others with using a communication facility, a telephone, in causing and facilitating a drug trafficking offense, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2.

On September 16, 2005, Hamilton, through his retained counsel, filed a motion to suppress evidence derived from a Title III wiretap that had been used in the case. See Record Document 102. On December 2, 2005, Gordon Blackman ("Blackman") was appointed to represent Hamilton. See Record Document 137. On December 12, 2005, this court denied Hamilton's motion to suppress the wiretap evidence. See Record Documents 149 and 150. On December 20, 2005, Hamilton, through his new counsel Blackman, filed a motion to exclude fingerprint evidence

found on objects within the red Oldsmobile.² See Record Document 164. On January 11, 2006, this court denied that motion. See Record Documents 182 and 183. On January 11, 2006, Hamilton, through his counsel Blackman, filed a motion to dismiss the indictment on grounds of multiplicity of counts. See Record Document 190.³

Hamilton subsequently pleaded guilty to counts one, two and four on January 18, 2006. See Record Documents 196 and 197. He was then sentenced to one hundred thirty-six months of imprisonment as to counts one and two, with those terms to run concurrently. He was also sentenced to sixty months of imprisonment as to count four, to be served consecutively to the one hundred thirty-six month sentence imposed as counts one and two. See Record Document 227.

Hamilton timely filed a notice of appeal. See Record Document 229. On appeal, he argued that this court violated Federal Rule of Criminal Procedure 32(i)(1)(A) and (B), 18 U.S.C. § 3552, and the Sixth Amendment when it denied his request at sentencing for additional time to review a new amendment to the PSR and when it did not provide him with the probation officer's sentencing recommenda-

---

²Two prints were identified as having been made by Hamilton. Both of these prints were developed on the back of a paper label inside the lid of a purple CD case found on the front passenger seat of the car. See Record Document 156.

³Hamilton chose to plead guilty before this motion was decided.

4

tions. On March 23, 2007, the Fifth Circuit affirmed, finding no error in failing to provide Hamilton with the probation officer's sentencing recommendation because it was not required to do so. It also found no error in refusing to give Hamilton additional time to review the information contained in the PSR amendment because the record indicated that Hamilton was provided with the information contained in the amendment at the time of the plea agreement. See Record Document 254. Hamilton then filed the instant motion, pro se. See Record Document 263.

## II. LAW AND ANALYSIS

### A. Ineffective Assistance In The Pretrial Process.

Hamilton first alleges that his counsel's failure to file a motion to suppress the firearms that were found in the Oldsmobile and used to charge him in court four of the indictment rendered his counsel ineffective. To prevail on a claim of ineffective assistance of counsel, Hamilton must prove that (1) his counsel's actions fell below an objective standard of reasonableness and (2) his counsel's ineffective assistance was prejudicial. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Bryant v. Scott, 28 F.3d 1411, 1414-1415 (5th Cir. 1994). Under the first prong of the Strickland analysis, the court is to presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. See Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.

Hamilton may overcome this presumption only by showing that under the "totality of the circumstances," the attorney's performance was "outside the wide range of professionally competent assistance." Id. at 690, 104 S. Ct. at 2066.

Under the second prong of the Strickland test, Hamilton must show "that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different." Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. To satisfy the prejudicial prong of the Strickland test in the context of a non-capital sentencing proceeding, Hamilton must establish that he would have received less time in prison. See United States v. Grammas, 376 F.3d 433, 438 (5th Cir. 2004). If Hamilton fails to establish either prong of the Strickland test, then his claim of ineffective assistance of counsel must fail.

Hamilton is unable to meet the first prong of Strickland because he failed to set forth evidence showing that Blackman's failure to file a motion to suppress the firearms was unreasonable. Hamilton contends that Blackman should have filed a motion to suppress the firearms found in the car on the basis that his only connection to the car from which the guns were recovered was his fingerprint on a CD case found in the car. However, Hamilton has not alleged any factual basis for a motion to *suppress* the

firearms. Hamilton's argument goes towards the weight of the evidence, which could have been argued at trial had he chosen to proceed accordingly. Hamilton's concerns over the firearms and his perceived tenuous connection to them do not implicate any constitutional violations.[4] Thus, a motion to suppress was not warranted. Defense counsel cannot be faulted for failing to raise a baseless objection. See Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (holding that an attorney cannot be judged deficient for his failure to raise a "frivolous" issue); Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions").

Similarly, Hamilton is unable to meet the second prong of Strickland because he has failed to prove prejudice by demonstrating a reasonable probability that but for his attorney's failure to file such motions, the result would have been different. See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. Accordingly, his contention that his counsel was ineffective in the pretrial process fails.

## B. Ineffective Assistance In The Plea Process.

Hamilton appears to assert that his attorney's erroneous advice about his potential sentence rendered his plea involuntary. He contends that his counsel was

---

[4]In addition, Hamilton's assertions are contrary to the statements he made at the time of the guilty plea, wherein he acknowledged the elements of the offense. See Transcript of Guilty Plea at 21-22.

7

ineffective in that he failed to inform the defendant of all of the law relevant to his decision to plead guilty. Specifically, Hamilton complains that his counsel did not inform him that the sentence for the gun charge in count four would run consecutive to the sentence he would receive for counts one and two.

Hamilton is unable to demonstrate prejudice on this issue. Because this claim of ineffective assistance of counsel is in the context of a guilty plea, Hamilton must comply with Hill v. Lockhart's amendment to the Strickland criteria. He must prove prejudice by demonstrating that there is a "reasonable probability that, but for counsel's errors, he would not have [pleaded] guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985). However, Hamilton has failed to meet this standard. Hamilton claims in his motion that "[h]ad it not been for counsel misunderstanding of the language of § 924(c)(1) and misleading advice, [he] would have continued to request and pressure counsel to file a motion to suppress the firearms themselves or at the very least would not have pleaded guilty to Count #4." Record Document 263 at 17. Despite his contentions, there is significant evidence to indicate that Hamilton was fully informed at the time of his plea.

The plea agreement, signed by both Hamilton and his counsel, provided:

> Defendant further understands and acknowledges that the maximum punishment on Count 4 is a term of imprisonment of <u>not less than 5 years</u>. The Defendant understands that this sentence cannot be probated, and that **this sentence shall run consecutively to any term of imprisonment imposed on Count 2.**

Record Document 197 at 3 (emphasis in original). The plea agreement further stated:

> This is the entire plea agreement between the United States Attorney's Office and the Defendant and is entered into freely, knowingly, and voluntarily with no threats, or coercion after due consultation with counsel.

<u>Id.</u> at 5. The form entitled "Understanding Of Maximum Penalty And Constitutional Rights" signed by Hamilton at the time of the guilty plea provided:

> I, Chevell Hamilton, the above named defendant, having been furnished a copy of the charge and having discussed same with my attorney, state that I understand the nature of the charge against me and the maximum possible penalty that may be imposed against me as set forth in the plea agreement.
>
> . . .
>
> I further state that my plea in this matter is free and voluntary and that it has been made without any threats or inducements whatsoever (except the plea agreement) from anyone associated with the State or United States Government or my attorney and that the only reason I am pleading guilty is that I am in fact guilty as charged.

Record Document 197 (Document 2) at 1-2.

The transcript of the guilty plea hearing reveals a telling exchange between the court and Hamilton. Notably, Hamilton's counsel was present and standing next to Hamilton during the exchange while the court reviewed the contents of the plea agreement with Hamilton:

> THE COURT: Let's turn, please, to paragraph 6 where it states that the -- this is the weapon count. The sentence shall run consecutive to any term imposed on Counts 1 and 2. Do you understand that that's how the gun charge works nowadays?
>
> THE DEFENDANT: Yes.

Transcript of Guilty Plea at 10-11.

In addition, before accepting Hamilton's plea, the court examined Hamilton as to the voluntariness of the plea. Hamilton stated that he was twenty-seven years old and had graduated from high school. The court asked Hamilton whether he had "a full understanding of the charges in Counts 1, 2 and 4, and [] had the advice of his lawyer about the plea" that he was about to make, and Hamilton answered, "Yes." Transcript of Guilty Plea at 4-5. The court next asked Hamilton whether his counsel had "been available . . . to consult" with him and answer his questions, to which Hamilton answered yes. Id. at 5. When asked whether he was "satisfied with the legal services being performed" on his behalf by Blackman, Hamilton answered "Yes." Id. He averred that no one had "lean[ed] on" him or used "undue persuasion"

10

to convince him to plead guilty and that he was pleading guilty because he was in fact guilty as charged in counts one, two and four. Id. at 8-9. He expressed his understanding that by pleading guilty he was waiving his constitutional rights to a jury, to cross-examine the witnesses presented against him, and to testify and present evidence on his own behalf. See id. at 6-8. He affirmatively stated that he understood the statutory maximum sentence for count one was forty years, count two was life in prison and that the sentence for count four "shall run consecutive to any term imposed on Counts 1 and 2." Id. at 9-11. Hamilton was informed that the court would determine the sentence in accordance with the federal sentencing guidelines and the guideline chart located in the sentencing guidelines manual. He then entered his plea of guilty.

The completed PSR that was provided to Hamilton's counsel[5] detailed the following sentencing options:

> 86. Statutory Provisions - Count One: The statutory term of imprisonment for this offense is not less than five (5) years nor more than forty (40). [21 U.S.C. § 841(b)(1)(B)(ii)]
>
> 87. Statutory Provisions - Count Two: The statutory term of imprisonment for this offense is not less

---

[5] The PSR is dated March 28, 2006. Presumably, defense counsel received a copy not long thereafter.

11

> than ten (10) years nor more than life. [21 U.S.C. § 841(b)(1)(A)(iii)]
>
> 88. Statutory Provisions - Count Four: The statutory term of imprisonment for this offense **is at least five (5) years consecutive to any other sentence.** [18 U.S.C. § 924(c)(1)(A)(i)]
>
> 89. Guideline Provisions - Counts One and Two: Based on a total offense level of thirty-one (31) and a Criminal History Category of II, the guideline imprisonment range is one hundred twenty-one (121) to one hundred fifty-one (151) months. (U.S.S.G. Ch. 5, Pt. A).
>
> 90. Guideline Provisions - Count Four: Pursuant to U.S.S.G. § 2K2.4(b), the term of imprisonment is that required by statute. **The statutory requirement is at least five (5) years consecutive to any other sentence.**

PSR at 15 (emphasis added).

Sentencing was scheduled for April 13, 2006, but was reset to May 4, 2006.

The court began the sentencing hearing by asking Hamilton the following question:

> The record needs to show that you have read the presentence report and have had an adequate opportunity to discuss it with Mr. Blackman; yes or no?

Transcript of Sentencing at 2. Hamilton answered, "Yes, I read it." Id. However, later during the sentencing hearing, Hamilton's counsel inexplicably stated:

12

> MR. BLACKMAN: Your Honor, I have never read a pre-sentence report that gave a guideline range and then said that there should be a separate sequential amount of time that should be added on to it after that, that's not included within that guideline range.
>
> THE COURT: The gun charge has always been 5 additional years consecutive to the base charge, always. And that's what the law has been for many years. As long as you and I have been here, it's been the law.
>
> . . .
>
> MR. BLACKMAN: But I don't see that as adding 60 months to 151 months to give him a total guideline exposure. I don't see that anywhere.
>
> . . .
>
> MR. BLACKMAN: Mr. Hamilton would like to make the point, too, that certainly I explained him my understanding, which apparently is in Your Honor's ruling, is in error; and he made his plea with the understanding that he was looking at 15 years, unless somehow the guidelines came out higher. . . .
>
> . . .
>
> MR. BLACKMAN: Well, like I said, the -- I guess what it comes down to is my understanding that the guidelines as calculated are supposed to subsume all the conduct. And whether or not that's the case -- that's certainly what I told Mr. Hamilton. That's what I thought we were looking at. And maybe I was ineffective.

Transcript of Sentencing at 12-16.

13

Hamilton bases his ineffective assistance of counsel claim principally on this latter exchange with the court. However, "[a]n erroneous estimate by counsel as to the length of sentence" is not "necessarily indicative of ineffective assistance." Beckham v. Wainwright, 639 F.2d 262, 265 (5th Cir. 1981). An attorney's "good faith but erroneous prediction of a sentence . . . does not render the guilty plea involuntary." Johnson v. Massey, 516 F.2d 1001, 1002 (5th Cir. 1975); see also United States v. Stumpf, 827 F.2d 1027, 1030 (5th Cir. 1987) ("a defendant's reliance on his attorney's erroneous prediction of leniency is not sufficient to render a guilty plea involuntary"); United States v. Harmon, 139 F.3d 899 (5th Cir. 1998) (finding that the defendant could not "claim that his guilty plea was involuntary based upon his attorney's erroneous prediction about the length of the sentence"); United States v. Gracia, 983 F.2d 625, 629 (5th Cir. 1993).[6] As the Fifth Circuit explained in Daniel v. Cockrell, 283 F.3d 697 (5th Cir. 2002):

> [a] guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would receive a lesser sentence. In other words, if the defendant's expectation of a lesser sentence did not result from

---

[6] Despite the **numerous** cases the court located on the issue of an attorney erroneously predicting the length of a client's sentence, the government failed to cite a *single case* regarding such. The government is admonished to include relevant case cites that are applicable to the facts of the case before the court in its future filings, as opposed to general legal conclusions.

> a promise or guarantee by the court, the prosecutor or defense counsel, the guilty plea stands. Likewise, a guilty plea is not rendered involuntary because the defendant's misunderstanding was based on defense counsel's inaccurate prediction that a lesser sentence would be imposed.

Daniel, 283 F.3d at 703.

Even when an attorney erroneously estimates his client's potential sentence, the defendant must satisfy the prejudice requirement by showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59, 106 S. Ct. at 370; Stumpf, 827 F.2d at 1030. Deficient representation alone is insufficient to obtain relief on an ineffective assistance of counsel claim. Strickland requires both a deficiency of counsel and resulting prejudice.

Hamilton cannot show prejudice in light of his affirmative statements in court and the court's specific admonitions to him. Hamilton was specifically advised regarding the statutory maximum sentences for the counts to which he was pleading and he stated that he understood the available range of punishment. At no point did Hamilton refuse to plead guilty or express any objection when faced with this information. Thus, he cannot now contend that his guilty plea was in reliance upon some alternative characterization of his sentence exposure given to him by his counsel.

15

Furthermore, Hamilton represented to the court during the plea colloquy that no one made him any promises as to what his sentence would be. Although Hamilton refers the court to the transcript of the sentencing hearing to support his claim of ineffective assistance, the transcript contains no allegation of guarantees or promises that he would receive a specific sentence or a sentence within a specific range. The transcript merely reveals an erroneous estimation of the sentence to be imposed under the sentencing guidelines. However, as stated, an erroneous estimation of the guidelines does not entitle Hamilton to relief.[7] Given that Hamilton knew that the court was charged with sentencing him within the statutory range of punishment up to life in prison, and given his averments that he was not promised a sentence within a specific range of punishment, he has not shown a reasonable probability that but for the alleged miscalculation by counsel, he would not have pleaded guilty and would have insisted on going to trial. See Stumpf, 827 F.2d at 1030.

---

[7]This case is distinguishable from United States v. Herrera, 412 F.3d 577 (5th Cir. 2005) and United States v. Grammas, 376 F.3d 433 (5th Cir. 2004) because those cases involved claims of misadvice regarding the maximum sentence the defendants would face if they went to trial. Herrera and Grammas also are distinguishable in that they both involved definitive statements as to the maximum exposure each defendant faced at trial, as opposed to estimations or predictions. In addition, when a case involves a guilty plea, such as the case sub judice, the court has the opportunity to correct any misinformation regarding sentencing exposure, as was the case with Hamilton.

16

Sworn statements in open court at guilty plea hearings "carry a strong presumption of verity." United States v. Palmer, 456 F.3d 484, 491 (5th Cir. 2006) (citations and quotations omitted); see also United States v. Adam, 296 F.3d 327, 333 (5th Cir. 2002); United States v. Abreo, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly). Hamilton's arguments in his motion and his counsel's statements during sentencing are belied by the written documents before the court, signed by both Hamilton and his counsel, and by statements made during the guilty plea and sentencing. The attempts by Hamilton and his counsel to profess ignorance of the consecutive nature of the gun charge are contradicted by a simple reading of the plea agreement, by the discussion of custody options contained in the PSR, by the Rule 11 colloquy provided by the court to both Hamilton and his counsel, and by a cursory reading of the statute with which Hamilton was charged in count four.[8] These unequivocal statements by the

---

[8]Hamilton's counsel's statements to the court that he was unaware of the consecutive nature of the sentence for the gun charge is simply not believed by the court, as evidenced by the court's exchange with counsel during the sentencing hearing, wherein the court reminded counsel that the consecutive nature of the gun charge had been in effect for quite some time. This was not Mr. Blackman's first appearance in federal court, nor was it his first time to represent a client at sentencing in federal court. Counsel's prior experiences with this court, the documents signed by counsel, and counsel's exchanges with the court belie his attempt to feign ignorance

17

government in the plea agreement, the court during the guilty plea colloquy and the probation office in the PSR dispel any notion that Hamilton was not properly informed of the nature of the charges and consequent sentence or that Hamilton received ineffective assistance of counsel. Counsel's attempts to convince the court otherwise were to no avail at the sentencing hearing and reliance upon those transparent and vain attempts to manufacture a claim for ineffective assistance of counsel is equally to no avail. The court finds no ineffective assistance of counsel as to this claim.

## C.  Ineffective Assistance In The Appellate Process.

Hamilton also claims that his counsel was ineffective on appeal by failing to preserve viable issues for review. Specifically, Hamilton contends that his counsel's failure to file a motion to suppress the firearms resulted in an inability to preserve the issue for appeal.[9] "A criminal defendant has a constitutional right to receive effective assistance of counsel on direct appeal." Henderson v. Quarterman, 460 F.3d 654, 664 (5th Cir. 2006). A claim of ineffective assistance of counsel based on the failure to

---

of the laws in Hamilton's situation.

[9]The government failed entirely to address this argument in its brief. However, as Hamilton's motion conclusively shows that he is entitled to no relief, the court will dispose of the claim.

18

argue an issue on appeal is governed by the two-part Strickland test, requiring a determination of whether: (1) the attorney's performance was deficient, and (2) the deficiency prejudiced the defendant. See Roe v. Flores-Ortega, 528 U.S. 470, 476, 120 S. Ct. 1029, 1034 (2000) (citation omitted). As with motions, counsel is not deficient for not raising every non-frivolous issue on appeal. See United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999). To be deficient, the decision not to raise an issue must fall "below an objective standard of reasonableness." Strickland, 466 U.S. at 688, 104 S. Ct. at 2064. This reasonableness standard requires counsel

> to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention.

Williamson, 183 F.3d at 462-63 (citations omitted).

As discussed earlier, a motion to suppress the firearms would have been futile, as it would not have raised an issue regarding a constitutional violation. Hamilton's arguments concerning his connection to the firearms (or lack thereof) go to the sufficiency of the evidence, which are arguments not properly suited for a motion to suppress. His guilty plea and his admissions during the guilty plea hearing removed any argument that he might make concerning the sufficiency of the evidence regarding

19

his connection to the firearms. Thus, Hamilton has not shown that his counsel was deficient for failing to preserve this issue or argue such on appeal.[10]

### III. CONCLUSION

For the above cited reasons, Hamilton's section 2255 motion is **DENIED**.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 28th day of January, 2009.

_____
JUDGE TOM STAGG

---

[10]Hamilton also claims that counsel was ineffective on appeal because he "failed to raised [sic] issues that had been perserved [sic] within the district court level." His mere allegation, without further support of any kind, is not sufficient to support a claim of ineffective assistance of counsel.

20